UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MC ALLEN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  7:14-CR-0482 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | McAllen, Texas |
| | ) | |
| GUADALUPE TREVINO, | ) | Thursday, July 17, 2014 |
| | ) | (9:50 a.m. to 10:23 a.m.) |
| Defendant. | ) | |


SENTENCING

BEFORE THE HONORABLE MICAELA ALVAREZ,
UNITED STATES DISTRICT JUDGE


Appearances:                 See Next Page

Court Recorder:              Candy Jones

Transcribed by:              Exceptional Reporting Services, Inc.
                             P.O. Box 18668
                             Corpus Christi, TX 78480-8668
                             361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES FOR:**</u>


Plaintiff:                    JAMES H. STURGIS, ESQ.
                              Assistant United States Attorney
                              1701 W. Business Hwy. 83
                              Suite 600
                              McAllen, Texas 78501

Defendant:                    ROBERTO J. YZAGUIRRE, ESQ.
                              Yzaguirre & Chapa, LLP
                              6521 N. Tenth
                              Suite A
                              McAllen, Texas 78504

U.S. Probation Office:    Rene Garcia
                          1701 W. Business Hwy. 83
                          Suite 729
                          McAllen, Texas 78501

1      **McAllen, Texas; Thursday, July 17, 2014; 9:50 a.m.**

2                    **(Call to Order)**

3          **THE COURT:**  Case Number 14-482, *Guadalupe Trevino*.

4          **MR. STURGIS:**  The Government is present and ready,

5   your Honor.  David --

6          **MR. YZAGUIRRE:**  We're present and --

7          **MR. STURGIS:**  -- Sturgis for the Government.

8          **MR. YZAGUIRRE:**  -- ready, your Honor.

9          **THE COURT:**  Mr. Trevino, please raise your right hand

10  to be sworn in.

11      **(Defendant Sworn)**

12         **THE COURT:**  Mr. Trevino, you are before the Court for

13  sentencing in connection with a charge that you conspired to

14  commit money laundering.  You face a possible term of

15  imprisonment of up to 20 years, a fine of up to $500,000, or

16  twice the value involved here.

17         You also face the possibility of three years of

18  supervised release and a $100 special assessment.

19         Do you understand that?

20         **THE DEFENDANT:**  Yes, I do.

21         **THE COURT:**  Mr. Yzaguirre, did you receive and review

22  the Presentence Investigation Report?

23         **MR. YZAGUIRRE:**  Yes, your Honor.  We did.

24         **THE COURT:**  Did you review it with your client?

25         **MR. YZAGUIRRE:**  Yes, we did.

4

1          **THE COURT:**  Mr. Trevino, did you review with your

2    attorney the Presentence Investigation Report?

3          **THE DEFENDANT:**  Yes, your Honor.  I did.

4          **THE COURT:**  The guideline range, as the report stands

5    right now -- and I understand there's an objection; we'll deal

6    with that in a moment -- but the report right now has you

7    scored at a range of 41 to 51 months.

8          Do you understand that?

9       **(No audible response)**

10         And if you don't --

11         **THE DEFENDANT:**  I --

12         **THE COURT:**  I ask this to see whether you understand

13   it.

14         **THE DEFENDANT:**  Yes, I --

15         **THE COURT:**  If you --

16         **THE DEFENDANT:**  -- understand.

17         **THE COURT:**  Okay.  If you understand something

18   different, this is the time to tell me.

19          **MR. YZAGUIRRE:**  We understand that it -- as 37 to --

20         **THE COURT:**  Well --

21          **MR. YZAGUIRRE:**  -- 46.

22         **THE COURT:**  -- once I have the motion from the

23   Government, then --

24          **MR. YZAGUIRRE:**  Yes.

25         **THE COURT:**  Is there a motion from the Government?

5

1          **MR. STURGIS:**  There is a motion from the Government,

2  your Honor.

3          **THE COURT:**  Okay.  Now the guideline range becomes 37

4  to 46 months.  Is that what -- okay.

5          **THE DEFENDANT:**  I understand.

6          **THE COURT:**  A lot of times people look at me like,

7  no, that's not correct, but --

8          **MR. YZAGUIRRE:**  Yeah --

9          **THE COURT:**  -- they don't say, "I don't --"

10          **MR. YZAGUIRRE:**  -- right, right.

11          **THE COURT:**  "I don't think so."  But, anyway, I have

12  to wait for the Government's motion before I remove that other

13  point.

14          Okay.  So, Mr. Yzaguirre, you do have a -- various

15  objections here.  The Court has looked at all of them.

16          Address the ones pertaining to the --

17          **MR. YZAGUIRRE:**  Judge --

18          **THE COURT:**  -- calculations.

19          **MR. YZAGUIRRE:**  Yes, Judge, if you let me make a

20  statement?

21          **THE COURT:**  Okay.

22          **MR. YZAGUIRRE:**  Okay.  I filed a number of objections

23  -- a bunch of them that had absolutely nothing to do with

24  whether we change the guidelines or not.

25          After reviewing everything and going over it with the

6

1    U.S. Attorney and myself in the back of the court, I only have

2    one motion that would affect the guidelines that I would like

3    to discuss with the Court this morning and try to convince the

4    Court.

5              It means two points for my client --

6         **THE COURT:**  Okay.  Let me first make sure that I

7    understand what you're saying.  Are you waiving those

8    objections --

9         **MR. YZAGUIRRE:**  Yes.

10        **THE COURT:**  -- or are you saying they're still there

11   and rule on them, but --

12        **MR. YZAGUIRRE:**  No, no, no.

13        **THE COURT:**  Okay.  You're waiving --

14        **MR. YZAGUIRRE:**  No --

15        **THE COURT:**  -- the objections.

16        **MR. YZAGUIRRE:**  I'm -- the only thing I want to go

17   forward with is the position of trust.

18        **THE COURT:**  Okay.

19        **MR. YZAGUIRRE:**  That's it.

20        **THE COURT:**  Okay.  All right.  All right.  I'm

21   willing to disregard the remainder as having been waived.  So

22   they will not be in issue at any point in time.

23             All right.

24        **MR. YZAGUIRRE:**  You know, Judge, when I started going

25   over this position of trust and I watched what the Probation

7

1    Department had said about it, and we -- when you get to the law

2    on it, as we read it, and the applicable notes -- and I'd like

3    to read some of them -- the abuse of trust would require this

4    Defendant abused his position in a manner that significantly --

5    the part that counts here is that significantly facilitated the

6    commission or concealed the commission of an offense.

7            And this -- and when the application notes are read,

8    they give examples, for example, of an attorney embezzling from

9    a client.

10           He has to do something.  He is the one that has to go

11   forward and do the embezzling.

12           A bank officer executive making false loans is

13   something that that person originates and starts.  He has to

14   move forward for it.

15           Okay.  That's when we're talking about the

16   commission.  Then we have to talk about the concealment.  Okay?

17           And the commission of the offense really -- and we

18   have to look, again, at the -- it was a campaign, and he was

19   one of the persons running for office.  It could have happened

20   -- it happened to him.  It didn't to his opponent.

21           At the same time, we also understand --

22           **THE COURT:**  But the question there becomes why?  I

23   mean, why is it that it happens to him and not to somebody who

24   isn't in office already?

25           **MR. YZAGUIRRE:**  No, I'm not saying --

1          **THE COURT:**  All right.  Okay.

2          **MR. YZAGUIRRE:**  -- it doesn't.

3          **THE COURT:**  Okay.

4          **MR. YZAGUIRRE:**  I'm saying it can.  But he was

5   campaigning.  The only thing -- the difference here is that the

6   Defendant's offense may be characterized as the failure to

7   properly report campaign contributions, where the source of the

8   funds changing the offense from simply a campaign financial

9   violation into money laundering, which is what happened here.

10  Okay?

11         **THE COURT:**  But how does that failure come about?

12  How does that change come about, Mr. Yzaguirre?

13         **MR. YZAGUIRRE:**  Well --

14         **THE COURT:**  Why --

15         **MR. YZAGUIRRE:**  -- there --

16         **THE COURT:**  And why?

17         **MR. YZAGUIRRE:**  There is nothing that he did.  It was

18  his omission to do something --

19         **THE COURT:**  What was the omission?

20         **MR. YZAGUIRRE:**  The omission was not having done it.

21         **THE COURT:**  Not having done what?

22         **MR. YZAGUIRRE:**  Not -- he didn't go out asking for

23  money.

24         **THE COURT:**  Well, that --

25         **MR. YZAGUIRRE:**  Although --

1          **THE COURT:**  -- I think, is really up to -- for

2    debate.

3          **MR. YZAGUIRRE:**  Well --

4          **THE COURT:**  But --

5          **MR. YZAGUIRRE:**  Well --

6          **THE COURT:**  But if one -- okay.  So what is it that

7    you claim he did?

8          **MR. YZAGUIRRE:**  Well, and I will go forward.

9          **THE COURT:**  Okay.

10          **MR. YZAGUIRRE:**  The Defendant's position as sheriff

11    did not in any way enable him to misreport or avoid detection

12    for misreporting campaign contributions.

13          **THE COURT:**  But it --

14          **MR. YZAGUIRRE:**  On the --

15          **THE COURT:**  It doesn't have to be just a concealment.

16    It can --

17          **MR. YZAGUIRRE:**  On the --

18          **THE COURT:**  -- be the commission itself.

19          **MR. YZAGUIRRE:**  Judge, on the contrary, the

20    misrepresenting the campaign funds or things like that, I mean,

21    they're public.  They have watch, you know, watchdog crews

22    looking at public officials for their campaign.

23          **THE COURT:**  And --

24          **MR. YZAGUIRRE:**  There was nothing he hid.

25          **THE COURT:**  So then what exactly did he do,

1   Mr. Yzaguirre?

2           **MR. YZAGUIRRE:**  Well, we don't think that his -- that

3   his position as the sheriff enabled him to do this.  And it's

4   that simple, Judge.

5           **THE COURT:**  Well, why -- why is -- why are we here to

6   begin with, Mr. --

7           **MR. YZAGUIRRE:**  Well --

8           **THE COURT:**  -- Yzaguirre?  Because --

9           **MR. YZAGUIRRE:**  Fine.  He committed an offense.

10          **THE COURT:**  Okay.  Okay.  And so it's the position

11  that enabled him to commit that offense.  We have here --

12          **MR. YZAGUIRRE:**  It --

13          **THE COURT:**  We have here a known drug trafficker

14  making a donation not to somebody who is out on the street, not

15  to somebody who isn't in a position to perhaps at some point in

16  time grab some --

17          **MR. YZAGUIRRE:**  But --

18          **THE COURT:**  -- favor, okay?

19          **MR. YZAGUIRRE:**  But the only thing --

20          **THE COURT:**  It's the position --

21          **MR. YZAGUIRRE:**  -- that --

22          **THE COURT:**  The reason -- the reason the donation is

23  made is because he is the sheriff at the time.

24          **MR. YZAGUIRRE:**  Well, you know, even -- even in the

25  response by the Probation Department, they say, "We concede

1    that the Defendant's belief regarding the transparency of

2    political accounting are accurate in theory."

3              Well, if they're accurate in theory, they're

4    accurate.

5              **THE COURT:**  Well, no --

6              **MR. YZAGUIRRE:**  The only thing --

7              **THE COURT:**  -- they're accurate in theory, because,

8    in fact, they weren't --

9              **MR. YZAGUIRRE:**  Well --

10             **THE COURT:**  What is the offense here?  The

11   concealment of the source.  So --

12             **MR. YZAGUIRRE:**  But he didn't --

13             **THE COURT:**  -- in theory, it should have been

14   properly reported, but it wasn't.

15             Isn't that why we're here?

16             **MR. YZAGUIRRE:**  Well, that -- it was -- it was his

17   lack of doing that.  It was some avoid -- it wasn't something

18   like the -- like it says in the applicable notes, the examples

19   they give.  It's something where you go forward to do

20   something.  You started it.

21             Here, he just didn't do it, and that caused

22   something --

23             **THE COURT:**  Okay.  But I guess -- and I'll come back

24   to the question I asked earlier.  What is it that you claim he

25   did, or what is it that you are willing to admit he did not do?

1          **MR. YZAGUIRRE:**  No, he's already admitted to a crime

2    here.

3          **THE COURT:**  But that he did not do what?

4          **MR. YZAGUIRRE:**  But it --

5          **THE COURT:**  No, what is it that he did not do?

6          **MR. YZAGUIRRE:**  I think the Court is saying the mere

7    fact that you're the sheriff, then you abuse your position of

8    trust.

9          I don't --

10          **THE COURT:**  And, well, it depends on the

11    circumstances, and not necessarily --

12          **MR. YZAGUIRRE:**  Well, that's what --

13          **THE COURT:**  -- always -- okay.

14          **MR. YZAGUIRRE:**  That's what --

15          **THE COURT:**  All right.

16          **MR. YZAGUIRRE:**  -- I'm saying.

17          **THE COURT:**  All right.

18          **MR. YZAGUIRRE:**  I personally, as his lawyer --

19          **THE COURT:**  Uh-huh.

20          **MR. YZAGUIRRE:**  -- feel that he did not --

21          **THE COURT:**  Uh-huh.

22          **MR. YZAGUIRRE:**  His position of trust as an -- as a

23    police officer had nothing to do with the reporting of the

24    campaign funds and how -- he didn't go out and seek money.

25          What happened was something happened --

1      **THE COURT:**  Well --

2      **MR. YZAGUIRRE:**  -- it came in, and we got knowledge

3  of it, and we didn't do anything about it.

4      **THE COURT:**  Well, not just you didn't do anything

5  about it.  It was a concealment of the source.

6      Otherwise, if you just didn't do anything about it,

7  that would be something different.  It's the --

8      **MR. YZAGUIRRE:**  But it wasn't a concealment.  It --

9  it's in the campaign reports.

10     **THE COURT:**  How is it in the campaign --

11     **MR. YZAGUIRRE:**  I mean, everything --

12     **THE COURT:**  No, no.  Well, stop there.  How is it

13  reflected on the campaign reports?

14     **MR. YZAGUIRRE:**  Well, maybe not properly.

15     **THE COURT:**  Exactly.  And why is that?  Because of

16  the source.

17     Well, is there a response from the Government?

18     **MR. STURGIS:**  Judge, and -- and I think both sides

19  have already made their point; that being Mr. Yzaguirre and the

20  Court's response back and forth.

21     And I do, respectfully, disagree with Mr. Yzaguirre

22  as to whether it is the commission and concealment.  It could

23  be either under 3B1.3.

24     So the Court has that before it, whether it's the

25  commission or the concealment.

1          And we've been talking about the -- or the Court has

2    been discussing the concealment, which was addressed in the

3    PSI.  I understand the Court's point is that it was not

4    reflected in the campaign accounting in any form, as the

5    numbers are discussed in the PSI.

6          So under that, you do have the concealment issue,

7    because it's not reported at all.

8          I think Mr. Yzaguirre's point is that it was an

9    omission; therefore, it wasn't an act.  And I believe the Court

10   is explaining that the omission is the act of leaving it out

11   and concealing.

12         The other side of the coin, your Honor -- and I know

13   that the Defendant would like to address the Court on this,

14   because we've had talks -- is that the Defendant's point is

15   that he in no way abused the position of sheriff, in that he

16   did not do anything directly for obtaining this.

17         The Court obviously has the facts before it.  There

18   are no reflections in the campaign accounting for this money.

19   Also, as well -- and I know that it's in the PSI -- there is

20   nothing directly in there stating that Mr. Trevino utilized his

21   position himself directly to do something for that money.  He

22   just accepted the money and did not report it.

23         **THE COURT:**  All right.  Thank you.  All right.

24         I will tell you this, Mr. Yzaguirre.  The Court

25   believes that the enhancement is warranted in this case, but

1  this is one of those situations where even if the Court is in

2  error in this case, that the fact that this is the former

3  sheriff, you know, weighs heavily as far as what the Court will

4  ultimately do in the case.

5          So I believe the enhancement is proper.  I'll address

6  the specific issue once I, you know, determine what sentence to

7  pronounce here.

8          Is there anything else then, Mr. Yzaguirre, that you

9  wish to say?

10         **MR. YZAGUIRRE:**  Well, if we're at this point now,

11  your Honor, yeah, there is some things I'd like to say.

12         You know, the sheriff was a law enforcement officer

13  for 42 years.  I submitted a -- I've submitted some paperwork

14  to the Court.

15         **THE COURT:**  I've reviewed all of it.

16         **MR. YZAGUIRRE:**  Three pages full of accolades, full

17  of awards, full of unblemished record in 42 years.

18         And although we know that a crime was committed here,

19  you know, I sure would like the Court to consider his past

20  record.  I mean, in my opinion, he's the best sheriff we've

21  had.

22         Accepting that an error happened here --

23         **THE COURT:**  Which makes it a very sad day for this

24  county.

25         **MR. YZAGUIRRE:**  Yes, it does, Judge.  And I'm not --

1    I'm making -- I'm not making short of that.  I'm just telling

2    the Court, I certainly would like the Court to consider his

3    unblemished record up to now, and then hopefully the Court

4    would recommend a little more lenient sentence than is on the

5    guidelines.

6           **THE COURT:**  All right.  Thank you.

7           **MR. YZAGUIRRE:**  And I think -- well, go ahead.

8           **THE COURT:**  All right.  Mr. Trevino, is there

9    anything you wish to say?

10          **THE DEFENDANT:**  Yes, ma'am.  I would.

11          I stand here before you not to make any excuses.  I'm

12   not going to create any justifications for what I did.  I am

13   very embarrassed, ashamed, very remorseful for the actions that

14   I took and for the inactions that I should have taken that led

15   us to this point.

16          I -- I've been thinking the last couple days of how

17   to convey to you my sincerity and my remorsefulness, and the

18   only way that I can do this is by being very simple and saying

19   I'm sorry.

20          It happened.  I did it.  I'm not here to blame

21   anybody.  I'm not here to point fingers at anybody.  I'm not --

22   I was not (indiscernible).  I did it, and there's something

23   that I didn't do that I should have done that led us to this

24   point.

25          I would also like to take this opportunity to

17

1    apologize to my wife, a long-time educator, 45 years in this

2    community, held in very high esteem.  And she does not deserve

3    to be put through what she's being put through the last two

4    years.

5              I apologize to my sons, because our last name will

6    always be synonymous with what has happened to me.

7              I would also like to apologize to all of my former

8    law enforcement peers at all four levels of jurisdiction.  We

9    had 40 good years and we accomplished a lot.  And I know that

10   this is outside my character and outside my reputation, and

11   they know it and I know what the truth is.  And I -- and I ask

12   them to forgive me for that.

13             But most of all, Judge, I would like to ask for the

14   forgiveness of the more -- to the more than 107,000 people in

15   this county that voted for me in the last election.  I've let

16   them down.  I betrayed them.  And the most sincere way, like I

17   said, or simplest way of doing this to say I am sorry.  I am

18   sorry that I'm not going to be able to finish some of the

19   projects that we started that I promised for them.

20             Because I did take my job and my duties very

21   seriously for the last 42 some years.

22             And I would like to close with this, if I may?

23             I'd like to thank the U.S. Government for treating me

24   with dignity and respect through the entire investigative

25   process.

1          That's all I have to say.

2          **THE COURT:**  Thank you.

3          **MR. YZAGUIRRE:**  Your Honor, at this time, of course,

4    I would also like to request that the Court sentence my client

5    at the bottom end of the guidelines.  I think the Government

6    has something to say about that also.

7          **THE COURT:**  Is there anything from the Government?

8          **MR. STURGIS:**  Yes, your Honor.

9          First, in dealing with that, the Government has no

10   opposition -- obviously, it's the Court's discretion -- but the

11   Government has no opposition.  And the reason for that is

12   simple, your Honor.  In regards to Mr. Trevino's last remarks,

13   the Government needs the Court to know and everybody to

14   understand that Mr. Trevino did save the taxpayers of this

15   county and the United States a lot of money, and a lot of

16   effort and time by coming forward.

17         As the Court knows, he did enter a plea to the

18   Information rather than going through a trial and all the

19   tribulations that go with that.

20         So based on that, the Government has no opposition to

21   the low end.

22         At the same time, in regards to Mr. Trevino's other

23   remarks, obviously, the Court and everybody in this courtroom

24   as well as the citizens know that this is the problem that

25   undermines a lot of the public's trust.  And it's simple.  It

1   really comes down to greed is what it is, is people want money.

2   People want the power.

3          And I think that this is really what this case is

4   about.  I'm sure Mr. Trevino did do a lot of good things for

5   the community, but at the same time what his actions or

6   inactions have done is undermine the trust.

7          And so the Court has this case before it based on

8   that.

9          **THE COURT:**  Thank you.

10         Mr. Trevino, the Court, of course, has reviewed all

11  of the information in the report, and I will tell you very

12  frankly that I have more questions after having reviewed the

13  report than I did from having taken the plea in this case.

14         There is a lot that I think is not answered for here.

15  You said that you know what the truth is.  Well, you may be the

16  only one -- you and Tomas Gonzalez, perhaps, and Julio Davila,

17  perhaps, and Joe Padilla, perhaps, may be the only ones that

18  will ever know what the truth is, because I cannot say, after

19  having read this report, that I am satisfied that I know the

20  exact circumstances of everything that occurred here.

21         You know, by your own admission, and this -- you

22  know, a former prosecutor in Laredo used to always say people

23  don't lie to get into trouble, they lie to get out of trouble.

24         By your own admission, you admit to 20 to $25,000,

25  which doesn't account for what's reflected in the campaign

1    reports, because that only accounts for $10,000.

2            So, you know, there was other monies received here.

3    And you indicate that, you know, you didn't do what you should

4    have done.  Well, this is a little bit something more than

5    that.  This is not just a matter of not properly noting some

6    money here.

7            It is, without a doubt, a serious problem in this

8    county and throughout south Texas that we deal with drug

9    trafficking every single day.

10           So when you are the highest elected official in the

11   county, I think you have even more of a duty than just an

12   average law enforcement officer to ensure that your actions are

13   completely without question.

14           And you clearly knew at the very, very earliest --

15   and this is, again, one of those areas where I cannot tell --

16   according to Tomas Gonzalez, he met you personally.  You deny

17   that.  According to Tomas Gonzalez, he personally gave you

18   hundreds of thousands of dollars.  You deny that.

19           Now, some of that supposedly was through Jose

20   Padilla, and he very well may have been pocketing some of that

21   money.  But when somebody within your organization knows that

22   you are willing to take money from drug traffickers, then that

23   does lead to corruption throughout the organization.

24           And sadly here in Hidalgo County, we've had for the

25   past two years a serious problem in that respect, because of

1    the numerous other cases involving corrupt law enforcement

2    officers.

3            I firmly believe that the integrity of a unit is

4    something that flows from the top to the bottom here.  And some

5    -- somewhere along the lines here, Mr. Trevino, the trust in

6    our public servants, including, sadly, some in the judiciary,

7    is diminished because of the actions of one or two people, and

8    sometimes more than one or two people.

9            I actually went through and we have pages here of

10   cases dealing with corrupt law enforcement officers.  Now,

11   they're not tied to you, but we have cases that come through

12   our system routinely.  And every time that that happens, it

13   diminishes the trust that the public has in our law enforcement

14   officers.  And even if it is, you know, something like you

15   claim -- you know, your claim is here, "I simply did not report

16   campaign contributions."

17           Okay.  But this is not just a matter of not reporting

18   campaign contributions, because, you know, the law prohibits

19   campaign funds from being spent for personal use, so where did

20   that nonreported money go but for personal use?  And that is a

21   separate crime -- maybe a misdemeanor, a state misdemeanor --

22   but that is a separate crime.

23           So we're not talking here just about money

24   misreported that -- a name being changed, an address being left

25   out -- but it goes much more than that when an individual is

1    willing to cross the line.  Then the line, I think, gets very

2    blurry.

3            And the question down the road becomes, you know,

4    what other lines are to be crossed here?

5            There's a lot in the report that hasn't been answered

6    in the Court's opinion, but what it really comes down to is

7    this, Mr. Trevino.  You know, you knew that this person was a

8    drug trafficker, and you, as the top law enforcement in this

9    county, are taxed with preventing a crime -- not simply

10   apprehending criminals, but also preventing crime.

11           So when you're taking money from somebody who is a

12   known drug trafficker and not reporting that properly, and for

13   all we know using it for personal use, because it's not being

14   reported to your campaign, you are contributing to the problem

15   that we have in this county.

16           Now, I understand what Mr. Yzaguirre says as far as

17   the long history that you have in law enforcement, and I think

18   that's probably what makes it worse.  If you are a rookie

19   coming into the system, you might say, "Well, you know, it's

20   too young, too inexperienced, too ignorant to know any better,"

21   but you of all people should have known better.

22           And I did review everything that was presented to me,

23   and I reviewed the long list of training that you have, and

24   many of those dealt with issues related to drug trafficking.

25           Now, so how -- how somebody with this kind of record

1    then decides that it's okay to accept money from a known drug

2    trafficker, and to not report that money, and to do whatever it

3    is that was done with that money, I don't know and I don't

4    understand it.

5             And I think -- I'll come back to the comment I made a

6    few moments ago that it is a sad day for Hidalgo County when

7    our top law enforcement officer willingly accepts money from a

8    known drug trafficker, and not once but more than once.

9             And, at the very, very least, we have the two

10   occasions in July of 2011 and then some almost a year later in

11   June of 2012, at least as reflected on your campaign reports.

12            Now, again, you know, all those aren't accurate, so

13   we don't know exactly when those were received, but it was not

14   a one-time occasion, because, again, even by your own

15   admission, you admit to 20 to $25,000 there.

16            Yeah, I keep seeing you and I don't know if you want

17   to say something else, or if you're --

18        **(Defendant and Counsel confer)**

19        **THE DEFENDANT:**  No, your Honor.

20        **THE COURT:**  All right.  Well, this is the time to say

21   something.  And I'm -- I did hear a little bit, and I wasn't

22   trying to eavesdrop.

23            But I'm not assuming anything more than what's in the

24   report.  I'm relying on what's in the report.  In the report,

25   by your own admission, you say 20 to $25,000.

1          Now, Jose Padilla claims it was much more than that.

2     The question whether he can be trusted is very debatable.  He

3     may have been soliciting money on your behalf and pocketing it,

4     so you may not have known.

5          **MR. YZAGUIRRE:**  Right.

6          **THE COURT:**  Tomas Gonzalez claims that -- I'm -- it's

7     from the report, okay?

8          Tomas Gonzalez claims there was much more than that.

9     You know, he's -- he's awaiting his own sentencing.  Who knows

10    what he may say.  And he may be saying things to try to

11    minimize his sentence.

12         But I'm looking at --

13         **MR. YZAGUIRRE:**  Judge --

14         **THE COURT:**  -- looking at the report, and what --

15    what Mr. Trevino admits to himself is not accounted for as far

16    as what's reflected in the campaign reports.  The campaign

17    reports reflect $10,000.  He admits 20 to $25,000.

18         So there is therein a difference of $15,000.  And,

19    you know, I'm willing to hear an explanation if you have an

20    explanation.

21         **MR. YZAGUIRRE:**  The only thing, Judge, that I would

22    ask the Court not to do -- and it's something that's one of

23    those things that's envisioned -- you read a -- you read a

24    report, okay, and the report says that, "I did this, and I did

25    that, and I did the other."

1          A lot of it, Judge, is from people who are trying to

2     help themselves at the time.

3          **THE COURT:**  Which is a --

4          **MR. YZAGUIRRE:**  So I'm asking the Court, you know,

5     don't take that into consideration.  Take just what he pled

6     guilty to.

7          And in this particular case, as the PSI report came

8     out, we agreed with it.  The Government both, and myself, have

9     gone over everything, and we think those figures are correct.

10         **THE COURT:**  Well --

11         **MR. YZAGUIRRE:**  And -- but we're talking about what

12    you have in front of you now to sentence --

13         **THE COURT:**  And that is what --

14         **MR. YZAGUIRRE:**  -- the sheriff --

15         **THE COURT:**  -- I am relying on, and that's why I'm

16    saying that I'm not -- whatever Jose Padilla may have said,

17    there's reasons to doubt it.  Whatever Tomas Gonzalez may say,

18    there's reasons to doubt it.

19         What I'm saying is by the sheriff's own admission, he

20    says 20 to $25,000.  Ten are reflected in the campaign reports,

21    so that means there's 15 -- or $10,000 other dollars not

22    reflected in the campaign reports.

23         So they're not reflected here for the very reason

24    that we've talked about, because he understood that they were

25    coming from a drug trafficker.  When they came in, I don't

1    know.  In what, you know, form they came in, I don't know.

2         What I do know is the campaign reports reflects

3    $10,000.  He's willing to admit to 20 to $25,000.

4         And so, clearly, money was being accepted here and

5    pocketed.  There's -- if it wasn't being pocketed, where is --

6    where is it reflected?  It's not reflected.

7         And it's not to touch on many of the other things

8    that raise questions in the report.  Where does somebody who is

9    a salaried employee, who is paid either by check or electronic

10   transfer, get $40,000 cash over a two-year period of time?

11        You know, that's what the bank, you know, records

12   reflect here.  So there is a lot here that isn't answered for.

13        The conviction is what it is.  And the amount of

14   money, very frankly, is not dispositive, in the Court's

15   opinion, because the nature of the charge.

16        And, Mr. Trevino, I might be more understanding if

17   what we had here was a case where some local businessman had a

18   son in trouble and he comes to you and says, "Look, he's a good

19   kid.  I'm trying to help him out.  Can you all just sort of

20   look the other way and let him go?"

21        You know, that might be more understandable, okay?

22        But when we have a known drug trafficker making

23   contributions to a sheriff -- he may not have ever gotten

24   anything from you, but the only reason that would ever happen,

25   in the Court's opinion, is because he hopes at some point in

1    time to be able to call in that favor.

2          And that brings me back to my original point.  It's a

3    very sad day for Hidalgo County here today.

4          Is there anything else, Mr. Yzaguirre?

5          **MR. YZAGUIRRE:**  No, your Honor.  Nothing from me.

6          **THE COURT:**  All right.  All right.

7          **MR. YZAGUIRRE:**  It's up to you.

8       **(Defendant and Counsel confer)**

9          **THE DEFENDANT:**  No, your Honor.

10         **THE COURT:**  All right.  In light of the fact that --

11   that the only objection raised was the abuse of trust position,

12   the Court overruled that objection, the guideline range remains

13   the 37 to 46 months in custody.

14         And the Court, however, does not believe that that is

15   sufficient under the circumstances here.

16         The Court has touched on this already, but I will

17   come back to it.  The Court does not think that the amount of

18   money, in and of itself, is dispositive here.  It is the source

19   of the money that raises concerns with the Court.

20         The abuse of trust position is reflected as a two-

21   point enhancement, but the Court believes that the fact that we

22   are talking here about the sheriff, the highest elected

23   official in the county, warrants further consideration.

24         The Court, in imposing the sentence that it does, has

25   considered all the 3553(a) factors, both those reflected within

1    the guidelines as well as the remaining factors; and, in

2    particular, the Court considers the need to promote respect for

3    the law in this case.

4            And the Court is going to sentence you, Mr. Trevino,

5    to a term of 60 months in custody.

6            You are also ordered to pay a $100 special

7    assessment.

8            The Court is also imposing a fine here in this case

9    of $60,000.

10           The Court is ordering a two-year term of supervised

11   release.

12           While you are on supervised release, you are not to

13   commit another federal, state, or local crime.  You are to

14   comply with the standard conditions adopted by the Court.

15   Additionally, you are not to possess a firearm, ammunition,

16   destructive device, or any other dangerous weapon.  And you are

17   to cooperate in the collection of a DNA sample.

18           Mr. Trevino, you do have the right to appeal.  If you

19   wish to appeal, you need to advise your attorney.  The appeal

20   needs to be filed within 14 days.  If you cannot afford an

21   appeal, you may file for in forma pauperis, in which case the

22   clerk will file your Notice of Appeal and the Court will

23   appoint appellate counsel.

24           **MR. YZAGUIRRE:**  Your Honor, if the Court please, will

25   the Court allow my client to turn himself into --

1          **THE COURT:**  The Court --

2          **MR. YZAGUIRRE:**  -- voluntarily to the institute of

3     designation?

4          **THE COURT:**  The Court will do so.  The Court also did

5     review your request for a placement at the Pensacola facility.

6          **MR. YZAGUIRRE:**  Yeah.

7          **THE COURT:**  I cannot tell you that I know whether

8     there is any gang members of the concern raised here in that

9     facility.  The Court will leave the placement of Mr. Trevino to

10    the Bureau of Prisons; however, the Court, in that respect,

11    will recommend to the Bureau of Prisons that he be placed in a

12    facility that does ensure his safety, based upon his former

13    position as the sheriff of this county.

14         And we'll allow you to continue out on bond.  Of

15    course, you must continue to comply with all the terms and

16    conditions that have been imposed.  You will be notified of

17    when and where you are to surrender.  You must surrender as

18    ordered to do so.  Otherwise, that can carry a separate charge.

19         Anything else at this time?

20         **MR. YZAGUIRRE:**  No, your Honor.

21         **THE COURT:**  Thank you.

22      **(This proceeding was adjourned at 10:23 a.m.)**

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          _August 13, 2014_


TONI HUDSON, TRANSCRIBER